UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| SALYERSVILLE HEALTH FACILITIES, LP, *an assumed name of* SALYERSVILLE NURSING AND REHABILITATION CENTER,<br><br>    Plaintiff,<br><br>v.<br><br>BUFORD FLETCHER,<br><br>    Defendant. | Civil No. 15-81-ART-EBA<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When Buford Fletcher became a resident at Salyersville Nursing and Rehabilitation Center, he signed a contract in which he agreed to arbitrate any claims that he might have against Salyersville as a result of his stay there. Fletcher later sued in Kentucky state court, alleging that Salyersville had been negligent and had breached various duties that it owed him. Salyersville now moves to compel arbitration. Fletcher's primary argument in response is that he is illiterate and did not read the arbitration agreement before he signed it, which in his view means that the agreement is procedurally unconscionable. Under well-established Kentucky law, however, an illiterate person has a duty to request that someone read him a contract before he signs it. If he signs the contract anyway, then he is bound by its terms. That is what happened here. The Court therefore must grant Salyersville's motion to compel arbitration.

## I. Factual background

When Fletcher moved into Salyersville's nursing and rehab center in April 2014, he signed an arbitration agreement. R. 1-1. According to its terms, that agreement "applies to any and all disputes arising out of or in any way relating to this agreement or to [Fletcher's] stay at [Salyersville] that would constitute a legally cognizable action in a court of law sitting in the Commonwealth of Kentucky." R. 1-1 at 2. The agreement goes on to describe some examples of the types of claims it would cover: "all claims in law or equity arising from one Party's failure to satisfy a financial obligation[,] a violation of a right claimed to exist under federal state or local law or [based on] contractual agreement between the parties[,] tort[,] breach of contract[,] fraud[,] misrepresentation[,] negligence[,] gross negligence[,] malpractice[,] death or wrongful death[,] and any alleged departure from any applicable federal, state, or local [standards]." *Id*.

In July 2015, Fletcher sued Salyersville in Kentucky state court. *See* R. 1-2. In his complaint, he brought two claims seeking damages for injuries that, according to Fletcher, he sustained while at Salyersville. In his first claim, Fletcher argued that Salyersville had "failed to meet [his] healthcare obligations" and that Salyersville's "reckless and/or negligent acts and/or omissions were the proximate cause of [his] injury." R. 1-2 at 3–4. In his second claim, he argued that Salyersville had breached its fiduciary and contractual duties, thereby injuring him. R. 1-2 at 5–6.

In October, Salyersville sued Fletcher in this Court. In its complaint, Salyersville primarily asked the Court for three things: a judgment finding that the arbitration agreement is "valid and enforceable," an order "enjoining [Fletcher] from further pursuing his claims" except via the procedures outlined in the arbitration agreement, and an order "staying this

2

Action pending an award or decision from the arbitrator." R. 1 at 6–7.[1] Fletcher filed a motion to dismiss, R. 5, which the Court denied in a previous order, R. 11. Salyersville has now filed a "motion to compel arbitration and to enjoin [Fletcher]" from pursuing his action in state court. *See* R. 6.

## II. Motion to compel arbitration

The Federal Arbitration Act ("FAA") was enacted "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). The FAA applies to written agreements to arbitrate disputes that arise out of contracts involving transactions in interstate commerce.[2] Under its terms, such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that a district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218 (emphasis in original).

When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: "first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

---

[1] Salyersville also asked the Court for "costs and fees in bringing this Action" as well as "[a]ny further relief that the Court deems appropriate." R. 1 at 7.

[2] The parties do not dispute whether this dispute arises out of a contract involving transactions in interstate commerce, *i.e.*, whether the Federal Arbitration Act applies to the arbitration agreement here.

### a. Whether the parties agreed to arbitrate

The arbitration agreement states that "[t]he parties voluntarily agree that any disputes covered by this agreement . . . that may arise between the Parties shall be resolved exclusively by an [alternative-dispute-resolution] process that shall include mediation [or] binding arbitration." R. 6-1 at 1. That agreement is therefore an arbitration agreement. And both parties signed it. R. 1-1 at 5. Thus, it seems as if the parties did in fact "agree[] to arbitrate." *Stout*, 228 F.3d at 714.

In response, Fletcher argues that the arbitration agreement was procedurally unconscionable. Procedural unconscionability, or "unfair surprise" unconscionability, "pertains to the process by which an agreement is reached and the form of the agreement, including the use therein of fine print and convoluted or unclear language." *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 342 n.22 (Ct. App. Ky. 2001) (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)). "[It] involves, for example, 'material, risk-shifting' contractual terms which are not typically expected by the party who is being asked to 'assent' to them and often appear [ ] in the boilerplate of a printed form." *Id.* (quoting *Harris*, 183 F.3d at 181). Fletcher does not argue that this agreement involved any of those things. Nor could he. The arbitration agreement here was a standalone document, was written in normal-sized font, used clear language, and was marked at the top—in large, bolded, underlined letters—with the following words: "Alternative Dispute Resolution Agreement (SIGNING THIS AGREEMENT IS NOT A CONDITION OF ADMISSIBILITY OR CONTINUED RESIDENCE IN THE FACILITY)." R. 1-1 at 5 (emphasis in original).

No, instead Fletcher's procedural-unconscionability argument is premised on the fact that he cannot read. He is illiterate, he says, and thus—even though there is no indication that Salyersville's employees knew that Fletcher could not read—they nevertheless should have provided him with "with an oral synopsis of [the] document['s] purpose." *See* R. 8 at 2. Moreover, Fletcher says that the agreement was just "one of several documents contained in an admissions package upon his arrival at [Salyersville]." By asking him to sign all the documents at the same time, Fletcher seems to argue, they asked too much of him. For both of these reasons, Fletcher says that he did not "appreciate the legal significance of the arbitration agreement." *Id.* Thus, he concludes—without citing any authority in support—the arbitration agreement was unconscionable. And in his view that means the parties did not truly "agree" to arbitrate at all.

When determining whether the arbitration clause itself was validly obtained, "[s]tate contract law . . . governs." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003). And "[i]t is the settled law in Kentucky that one who signs a contract is presumed to know its contents." *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959). That rule "has been applied even to contracts of illiterate persons on the ground that[,] if such persons are unable to read, they are negligent if they fail to have the contract read to them." *Id.* Thus, the mere fact that Fletcher is illiterate does not mean that the contract he signed was unconscionable.

As for Fletcher's unconscionability-by-overload argument—*i.e.*, his contention that the agreement was somehow unconscionable because it was contained in a stack of other agreements—suffice it to say that this Court is aware of no authority suggesting that an agreement is unconscionable simply because it was signed along with other agreements, no

5

matter how numerous. In sum, the arbitration agreement was not unconscionable, which means both parties "agreed to arbitrate." *Stout*, 228 F.3d at 714.

### b. The scope of the agreement

When determining the scope of the arbitration agreement, courts must honor the "well-established rule" that any "doubts regarding arbitrability must be resolved in favor of arbitration." *Fazio*, 340 F.3d at 386 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). There is little doubt here about whether the scope of the agreement includes the claims at issue. Fletcher sued Salyersville in state court for negligence and breach of fiduciary/contractual duty. R. 1 at 3–4, 5–6. And the arbitration agreement states specifically that it covers claims for any "violation of a right claimed to exist under federal, state, or local law or [under] contractual agreement between the parties." R. 1-1. Claims for negligence and breach of fiduciary/contractual duty surely qualify as two such claims. Hence the scope of the agreement covers the claims at issue here.

### c. Whether Congress intended any federal claims to be nonarbitrable

Fletcher sued Salyersville only under state law, not federal law. *See* R. 1-2. Hence there are no federal claims at issue, and the Court need not consider whether Congress intended them to be nonarbitrable.

### d. Whether to stay any nonarbitrable claims

As explained above, both of Fletcher's claims here—negligence and breach of fiduciary/contractual duty—are arbitrable claims. Hence there are no nonarbitrable claims, and the Court need not consider whether to stay them.

### III. Motion to enjoin Fletcher from further pursuing the state-court action

Salyersville also moves to enjoin Fletcher from pursuing any action in state court. In support of that argument, Salyersville relies primarily on the Sixth Circuit's decision in *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). There, the circuit recognized that, although the FAA "requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate," the Act "does not specifically authorize federal courts to stay proceedings pending in state courts." *Id*. Thus, the circuit went on to explain, "the district court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti Injunction Act." *Id.* at 894.

Under that law, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. To "protect or effectuate [a district court's] judgments," the *Great Earth* court held, an injunction of the state court proceedings might well be "necessary to protect the judgment of the district court on this issue." *Great Earth*, 288 F.3d at 894. Thus, the circuit held, a district court does not violate the Anti Injunction Act by enjoining state court proceedings after the district court compels arbitration. *Id.* For this reason, courts in this circuit have enjoined further state-court litigation after granting a motion to compel arbitration. *See, e.g.*, *GGNSC Vanceburg, LLC v. Hanley*, No. CIV.A. 13-106-HRW, 2014 WL 1333204, at *11 (E.D. Ky. Mar. 28, 2014); *GGNSC Vanceburg, LLC v. Taulbee*, No. 5:13-CV-71-KSF, 2013 WL 4041174, at *11 (E.D. Ky. Aug. 7, 2013); *GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at *10 (W.D. Ky. Dec. 19, 2013).

What the *Great Earth* court did not say, however, was that a district court *must* enjoin a state-court proceeding after the district court compels arbitration. The circuit held only that such injunctions are permissible—not that they are required. Indeed, as the *Great Earth* court specifically noted, "the fact that an injunction *may* issue under the [Anti Injunction] Act does not mean that it *must* issue." *Great Earth*, 288 F.3d at 893 (quoting *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1377 (9th Cir. 1997)). In summary, this Court has the power to enjoin a state-court proceeding to protect an order compelling arbitration; the question is whether the Court should use that power here.

As the Supreme Court has cautioned us, federal courts should determine how to proceed with respect to the state courts with sensitivity to "federal-state relations." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). This so-called "comity doctrine," which counsels against federal intervention in state matters except where truly necessary, reflects "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102 (1981).

Here, the parties are being ordered to arbitrate all of the claims that Fletcher raised in his state-court complaint. And the Court is confident that the Kentucky state courts will respect and honor that order. They have in the past proven themselves more than able to protect the rights of litigants who are arbitrating a claim. *See, e.g.*, *N. Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 106 (Ky. 2010) ("[W]e reverse the April 12, 2010 Order of the Court of Appeals and remand to the Pike Circuit Court for entry of an order granting North Fork's

motion to stay litigation so that the claims asserted by Barry and Leetha Hall and Traveler Coal, LLC, against North Fork may be submitted to arbitration."); *Kodak Min. Co. v. Carrs Fork Corp.*, 669 S.W.2d 917, 921 (Ky. 1984) ("We vacate the Order of the Kentucky Court of Appeals and we hereby direct the Knott Circuit Court to stay its proceedings on this matter pending arbitration between the parties."). There is simply no evidence that the state court will not respect the agreement to arbitrate in this case. As such, an injunction is unwarranted.

Accordingly, it is **ORDERED** as follows:

(1) Salyersville's motion to compel arbitration, R. 6, is **GRANTED.**

(2) Fletcher shall prosecute his claims in accordance with the arbitration agreement.

(3) This matter is **STAYED** pending any further proceedings to enforce any award of the arbitrator.

This the 22nd day of December, 2015.

Signed By:
*Amul R. Thapar* AT
United States District Judge